## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

MEAGHAN AUFRICHTIG, on behalf of herself and all others similarly situated,

Plaintiff,

v.

ENFORMION, LLC, formerly known as CONFI-CHEK, INC.,

Defendant.

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

Plaintiff Meaghan Aufrichtig ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of Colo. Rev. Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA") against Defendant Enformion, LLC, formerly known as Confi-Chek, Inc. ("Enformion" or "Defendant"). Plaintiff makes the following allegations pursuant to her counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF ACTION

1.     On May 27, 2005, former Colorado Governor Bill Owens signed into law HB05-1288,[1] which amended the PTFA to prohibit commercially listing a cell phone number in a

---

[1] https://www.leg.state.co.us/clics2005a/csl.nsf/fsbillcont2/1BB0D3E00348AC6987256F90007C20C7?Open. *See also* https://leg.colorado.gov/sites/default/files/images/olls/2005a_sl_180.pdf.

directory, without permission.[2]  *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).

2.      This prohibition is designed to protect privacy.  As former State Representative Mark Cloer,[3] a prime sponsor of HB05-1288,[4] stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[5]

3.      Indeed, concern over cell phone privacy is widespread.  According to a research paper presented in May 2005 at the American Association for Public Opinion Research (AAPOR)'s Annual Conference[6] and January 2006 at the American Statistical Association (ASA)'s Second International Conference on Telephone Survey Methodology:[7]

> [T]here appears to be a strong reluctance on the part of cell phone owners to have their cell phone numbers listed in a directory. …
>
> This reluctance on the part of respondents to have their cell phone number listed in a directory may be rooted in not wishing to incur additional costs due to unsolicited incoming calls. …
>
> A more likely reason for their unwillingness to have their cell phone number listed is that respondents view the cell phone as more of a private medium of communication than their land-line phone. They probably wish to restrict access to their cell phone number to family and friends.[8]

4.      The Colorado General Assembly enacted subsection (4) of the PTFA to address

---

[2] https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/IndSumm/574E34C489356ADA87256FB100612E60?OpenDocument. *See also* https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/91320994cb8e0b6e8725681d005cb995/574e34c489356ada87256fb100612e60?OpenDocument.
[3] *See* https://www.leg.state.co.us/clics2005a/directory.nsf.
[4] https://lawcollections.colorado.edu/colorado-session-laws/islandora/object/session%3A36205 at p. 2461.  *See also* https://www.leg.state.co.us/CLICS2005A/csl.nsf/StatusAll?OpenFrameSet.

[5] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.

[6] https://aapor.org/wp-content/uploads/2024/05/AAPORPrograms2005.pdf at pp. 13, 84.
[7] https://scholar.google.com/citations?view_op=view_citation&hl=en&user=I2jkzr0AAAAJ&citation_for_view=I2jkzr0AAAAJ:M3ejUd6NZC8C; https://ww2.amstat.org/meetings/tsmii/2006/index.cfm?fuseaction=main.
[8] http://www.asasrms.org/Proceedings/y2005/files/JSM2005-000345.pdf at p. 4005.

these privacy concerns and to protect cell phone users from the misappropriation of their

personal information.  This aligns with the PTFA's overall purpose, as articulated by Colo. Rev.

Stat. § 6-1-301:

> The general assembly hereby finds, determines, and declares that the use
> of telephones for commercial solicitation is rapidly increasing; that this
> form of communication offers unique benefits, but entails special risks and
> poses the potential for abuse; that the general assembly finds that the
> widespread practice of fraudulent and deceptive commercial telephone
> solicitation has caused substantial financial losses to thousands of
> consumers, and, particularly, elderly, homebound, and otherwise
> vulnerable consumers, and is a matter vitally affecting the public interest;
> and, therefore, that the general welfare of the public and the protection of
> the integrity of the telemarketing industry requires statutory regulation of
> the commercial use of telephones.

5.    Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

(a)    On or after September 1, 2005, a person commits an unlawful
telemarketing practice if the person knowingly:

(I)    Lists a cellular telephone number in a directory for a
commercial purpose unless the person whose number has
been listed has given affirmative consent, through written,
oral, or electronic means, to such listing[.]

6.    Despite this abundantly clear proscription, Defendant has listed the cellular

telephone numbers of thousands of Colorado residents in its for-sale and for-profit directories,

without requesting (let alone actually receiving) affirmative consent to such listings.

7.    Thus, while Defendant profits handsomely from its unauthorized commercial

listing of Plaintiff's and other Class Members' personal information, it does so at the expense of

Coloradans' statutory privacy rights, under the PTFA.

8.    Not only is Defendant's misappropriation unlawful – it is also dangerous.  The

Federal Trade Commission's ("FTC") report on "Data Brokers" states:

> There are a number of potential risks to consumers from data brokers'
> collection and use of consumer data. … [T]hey may facilitate the sending
> of advertisements … which some consumers may find troubling and
> which could undermine their trust in the marketplace. Moreover, …
> people search products can be used to facilitate harassment, or even
> stalking, and may expose domestic violence victims, law enforcement
> officers, prosecutors, public officials, or other individuals to retaliation or
> other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers [i]ndefinitely
> [m]ay [c]reate [s]ecurity [r]isks[.][9]

9.      Plaintiff brings this action to prevent Defendant from further violating the privacy

rights of Colorado cell phone users and to recover statutory damages from Defendant, pursuant

to Colo. Rev. Stat. § 6-1-305(1)(c).

## PARTIES

10.     Plaintiff Meaghan Aufrichtig is, and has been at all relevant times, a resident and

citizen of Colorado Springs, Colorado. Plaintiff's cellular telephone number was listed by

Defendant in its directories, available at advancedbackgroundchecks.com and

fastpeoplesearch.com, to advertise and/or actually sell products and services.  Defendant never

requested – and Plaintiff never provided – affirmative consent, through written, oral, or electronic

means, to such listings.  In fact, Plaintiff has no relationship with Defendant whatsoever.  Plaintiff

had never heard of Defendant and had no reasonable ability to discover Defendant's use of her

personal information until shortly before filing suit.

11.     Defendant Enformion, LLC, formerly known as Confi-Chek, Inc.,[10] is a

California corporation with its principal place of business at 1915 21st Street, Sacramento,

---

[9] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. 48.
[10] https://bizfileonline.sos.ca.gov/api/report/GetImageByNum/013068145107226126077100223188059032150069217037.

California 95814. Defendant operates the directories advancedbackgroundchecks.com[11] and fastpeoplesearch.com.[12] Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. 1332(d) *et seq.* in that the proposed Class consists of over 100 people, the Classes are minimally diverse, on information and belief more than $5 million is at issue, and none of the exceptions to CAFA jurisdiction applies.

13.     The Court has personal jurisdiction over Defendant because Defendant regularly transacts business in Colorado and a substantial part of the events giving rise to the claims asserted herein occurred in Colorado. Defendant's tortious conduct – listing the cellular telephone numbers of thousands of individuals whom Defendant knows to reside in Colorado, without requesting or receiving said individuals' affirmative consent – caused injury in Colorado and thus constituted a tort here.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in and was directed to this District. Venue is additionally proper because Plaintiff resides in El Paso County, Colorado, which is in this District.

---

[11] *See* https://www.bigdomaindata.com/whois/advancedbackgroundchecks.com (showing "registrant" by the name of "Robert Miller" of company "Confi-chek, Inc." located in Sacramento, California).
[12] *See* https://www.bigdomaindata.com/whois/fastpeoplesearch.com (showing "registrant" by the name of "Robert Miller" of company "Confi-chek, Inc." located in Sacramento, California).

## LEGAL AND FACTUAL BACKGROUND

**I.    Overview of Defendant's Directories**

15.    Defendant is a data broker – a company "that collect[s] consumers' personal information and resell[s] or share[s] that information with others[.]"[13]

16.    Specifically, Defendant provides online "people search" (also known as "people finder") services.  People search companies, like Defendant, specialize in compiling vast amounts of information about individuals from various sources.[14]

17.    Defendant and its competitors monetize said personal details through their directories – some of which are ad-supported and give users free access to the data, and others of which furnish reports about people for a fee.

18.    Defendant's directories are available at advancedbackgroundchecks.com and fastpeoplesearch.com.  There, anyone on the Internet can view Coloradans' cell phone numbers, addresses, email addresses, and much more.

19.     This is achieved by simply searching an individual by name, city, state, phone number, address, and/or other parameters:[15]





20.    Users of advancedbackgroundchecks.com and fastpeoplesearch.com can also find

people listed by last name (i.e., those with last names starting with the letter "A"):





21.     After entering this information, advancedbackgroundchecks.com and fastpeoplesearch.com users are furnished a list of search results.  Each result corresponds to an actual person that Defendant has located who matches the searched parameters.[16]  Both advancedbackgroundchecks.com and fastpeoplesearch.com search results include searched individuals' cell phone number(s) and a plethora of other identifying information.

---

[16] Note, these images and the images in the subsequent paragraphs include redactions (in black), applied by Plaintiff's counsel for privacy preservation purposes.  Advancedbackgroundchecks.com and fastpeoplesearch.com do not, themselves, redact or blur searched individuals' sensitive personal information – including cell phone numbers.





22.     Upon selecting a particular person to investigate from the search results by clicking "view details" or "view free details," advancedbackgroundchecks.com and fastpeoplesearch.com users can access even more detailed reports.  These reports include searched individual's cell phone number(s) and a comprehensive view into said individuals' private details.





23.    As the above images of advancedbackgroundchecks.com and fastpeoplesearch.com make clear, Defendant knowingly lists Coloradans' cell phone numbers. On advancedbackgroundchecks.com's more detailed reports, Defendant notes how it "ha[s] determined … [a person of interest's] current and past phone numbers (cell phone and/or landline)[.]"



On fastpeoplesearch.com, Defendant states that "our data is updated regularly. It includes landline, cell phone, business and residential phone numbers, as well as information for addresses and people[.]" And Defendant does, in fact, provide phone numbers for what it correctly labels "[w]ireless" cell phone numbers.

24.    The purpose behind listing individuals' personal information – including cell phone numbers – on advancedbackgroundchecks.com and fastpeoplesearch.com is threefold.

25.    First, listing said information helps Defendant generate ad revenue. On advancedbackgroundchecks.com and fastpeoplesearch.com's search results and more detailed report pages, Defendant advertises third-parties' products and services. Shown here are advancedbackgroundchecks.com and fastpeoplesearch.com display ads for other people search companies' websites, including beenverified.com, instantcheckmate.com truthfinder.com, and spokeo.com.





**Advertisements for instantcheckmate.com and truthfinder.com appearing in advancedbackgroundchecks.com's search results**



**Advertisement for truthfinder.com appearing in
advancedbackgroundchecks.com's more detailed report**





**Advertisements for beenverified.com, instantcheckmate.com, spokeo.com, and truthfinder.com
appearing in fastpeoplesearch.com's search results**





26.     Second, listing Coloradans' cell phone numbers and other personal information helps Defendant entice users to acquire access to Defendant's paid, full background reports. These are available on another of Defendant's websites, peoplefinders.com.[17]

27.     Defendant advertises peoplefinders.com and its paid, full background reports on advancedbackgroundchecks.com search results through display ads enticing users to "view details" concerning persons of interest at peoplefinders.com.  Defendant also advertises peoplefinders.com and its paid, full background reports in the more detailed report pages of advancedbackgroundchecks.com and fastpeoplesearch.com, which encourage users to "get unlimited background details" and "view full background report[s.]"



**Advertisement for peoplefinders.com appearing in advancedbackgroundchecks.com's search results**



---

[17] *See, e.g.*, https://www.idstrong.com/remove-my-information/privateeye-opt-out/.



**Advertisements for peoplefinders.com appearing
in fastpeoplesearch.com's more detailed reports**

28.     To acquire a full background report from peoplefinders.com, a user can pay a
subscription fee ranging from $24.95 per month to $29.95 per month.[18]

29.     Third, listing Coloradans' cell phone numbers and other personal information
helps Defendant advertise its Endato "Fast Developer API."[19]  This API is another means by
which Defendant generates revenue, as Defendant charges developers for their access to and use
thereof.[20]

30.     Specifically, Defendant advertises the Endato "Fast Developer API" on
fastpeoplesearch.com's search results and more detailed reports.



**Advertisement for Endato's "Fast Developer API" appearing in
fastpeoplesearch.com's search results and more detailed reports**

---

[18] https://help.peoplefinders.com/hc/en-us/articles/360041197774-How-much-does-PeopleFinders-cost.
[19] *See, e.g.*, https://endato.com/developer-apis/; https://endato.com/help-center/what-is-api/.
[20]

31.     Thus, the listing of Plaintiff's and Class Members' cell phone numbers is for a commercial purpose.  Indeed, that is Defendant's entire business model.  Defendant is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to its customers and subscribers.

## II.    Defendant's Conduct Harms Coloradans

32.     Consumer data is key to the $26 billion-per-year online advertising industry in the United States.[21]  Clearly, and per the FTC, consumer data possesses inherent monetary value:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[22]

33.     In fact, individuals' private information has become such a valuable commodity that companies now offer individuals the opportunity to monetize their personal data.[23]

34.     These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data.  Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of

---

[21] http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

[22] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf at p. 2.

[23] *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.

protecting their data.[24]  A 2014 survey conducted by Harris Interactive on behalf of TRUSTe,

Inc. showed that 89 percent of consumers avoid doing business with companies who they believe

do not protect their privacy.[25]  The same is true for 80 percent of smartphone users, who say that

they avoid using smartphone apps that they don't believe protect their privacy.[26]

    35.    Defendant's misappropriation of Coloradans' cell phone numbers undeniably

deprives state residents of the ability to enjoy their PTFA privacy rights.  It also deprives them of

the real, quantifiable value of such data.

    36.    Further, "[p]eople search sites … offer a wealth of information that can be exploited

by malicious actors."[27]  For one, "[b]undling [personal data] all together and making it so easily

accessible can … put ordinary people at risk of … stalking and other forms of harassment."[28]

Second, people search sites' "comprehensive data allows cybercriminals to build detailed profiles

of potential victims, making it easier to craft convincing scams or carry out identity theft."[29]  This

"put[s] almost anyone within the reach of fraudulent telemarketers[]" and other wrongdoers.[30]

    37.    Information disclosures like Defendant's are particularly dangerous to the elderly.

"Older Americans are perfect telemarketing customers, analysts say, because they are often at

home, rely on delivery services, and are lonely for the companionship that telephone callers

---

[24] *See, e.g.*, https://web.archive.org/web/20240420201259/https://www.enisa.europa.eu/publications/monetising-privacy/@@download/fullReport; https://citeseerx.ist.psu.edu/document?repid=rep1&type=pdf&doi=8b70320d110370c82ca9cbab768db58b74878234.

[25] *See* https://web.archive.org/web/20190820142832/http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf at p. 3.

[26] *Id.*

[27] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.
[28] https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.
[29] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.
[30] http://www.nytimes.com/2007/05/20/business/20tele.html.

provide."[31]  The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent

telemarketers who take advantage of the fact that many older people have cash reserves or other

assets to spend on seemingly attractive offers."[32]

38.    Making matters worse, "[o]nce marked as receptive to [a specific] type of spam, a

consumer often is bombarded with similar fraudulent offers from a host of scam artists."[33]

## **CLASS ALLEGATIONS**

39.    Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent a class defined as all

Colorado residents whose cell phone numbers were listed on one of Defendant's websites (the

"Class").

40.    Plaintiff reserves the right to modify the Class definition, including by using

subclasses, as appropriate based on further investigation and discovery obtained in the case.

41.    **Numerosity:** The Class is composed of at least thousands of individuals, the

joinder of which in one action would be impracticable.  The disposition of their claims through

this class action will benefit both the parties and the Court.

42.    **Existence and Predominance of Common Questions of Fact and Law:** There

is a well-defined community of interest in the questions of law and fact involved affecting the

members of the proposed Class.  The questions of law and fact common to the proposed Class

predominate over questions affecting only individual Class Members.  Such questions include,

---

[31] *Id.*

[32] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.

[33] *Id.* at p. 3.

but are not limited to, the following: whether Defendant violated Colo. Rev. Stat. § 6-1-
304(4)(a)(I); and whether Plaintiff and Class Members are entitled to damages, reasonable
attorneys' fees, pre-judgment interest and costs of this suit, pursuant to Colo. Rev. Stat. § 6-1-
305(1)(c).

43.     **Typicality:** The claims of the named Plaintiff are typical of the claims of the
Class because Plaintiff, like all other Class Members, had her cell phone number listed on
thatsthem.com for a commercial purpose; Defendant did so without requesting or receiving
Plaintiff's affirmative consent (through written, oral, or electronic means); and Defendant's
misappropriation of Plaintiff's personal data (including the economic value thereof) came at the
expense of Plaintiff's PTFA privacy rights.

44.     **Adequacy:** Plaintiff is an adequate representative of the Class because her
interests do not conflict with the interests of the Class she seeks to represent, she has retained
competent counsel experienced in prosecuting class actions, and she intends to prosecute this
action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff
and her counsel.

45.     **Superiority:** The class mechanism is superior to other available means for the fair
and efficient adjudication of the claims of Class. Each individual Class Member may lack the
resources to undergo the burden and expense of individual prosecution of the complex and
extensive litigation necessary to establish Defendant's liability. Individualized litigation
increases the delay and expense to all parties and multiplies the burden on the judicial system
presented by the complex legal and factual issues of this case. Individualized litigation also
presents a potential for inconsistent or contradictory judgments. In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendant's liability. Class treatment of the liability issues will ensure that all claims and

claimants are before this Court for consistent adjudication of the liability issues. Finally,

Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby

making it appropriate for this Court to grant final injunctive relief and declaratory relief with

respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
**Violation of the Prevention of Telemarketing Fraud Act,
Colo. Rev. Stat. § 6-1-304(4)(a)(I)**

46.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

47.    Plaintiff brings this claim individually and on behalf of the members of the

proposed Class against Defendant.

48.    Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

    (a)    On or after September 1, 2005, a person commits an unlawful
           telemarketing practice if the person knowingly:

        (I)    Lists a cellular telephone number in a directory for a
             commercial purpose unless the person whose number has
             been listed has given affirmative consent, through written,
             oral, or electronic means, to such listing[.]

49.    Defendant failed to comply with this PTFA mandate.

50.    Defendant knowingly lists Coloradans' cell phone numbers. On

advancedbackgroundchecks.com's more detailed reports, Defendant notes how it "ha[s]

determined … [a person of interest's] current and past phone numbers (cell phone and/or

landline)[.]"  On fastpeoplesearch.com, Defendant states that "our data is updated regularly. It includes landline, cell phone, business and residential phone numbers, as well as information for addresses and people[.]"  And Defendant does, in fact, provide phone numbers for what it correctly labels "[w]ireless" cell phone numbers.

51.    Defendant's websites, advancedbackgroundchecks.com and fastpeoplesearch.com, are directories – i.e., an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names and addresses of businesses in a particular area[.]" *Directory*, <u>Oxford Learner's Dictionary</u>, https://oxfordlearnersdictionaries.com/us/definition/english/directory.[34]  Defendant admits as much, referring to advancedbackgroundchecks.com as a "directory"[35] and calling fastpeoplesearch.com "our free information services directory[.]"[36]

52.    Defendant engages in this conduct for a commercial purpose.  The purpose behind listing individuals' personal information – including cell phone numbers – on advancedbackgroundchecks.com and fastpeoplesearch.com is to generate ad revenue, entice users to acquire access to Defendant's paid, full background reports, and advertise Defendant's revenue-generating API service(s).

53.    Defendant never requests nor receives Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing[.]"  Colo. Rev. Stat. § 6-1-304(4)(a)(I).  Rather,

---

[34] *See also Directory*, <u>Merriam-Webster Online Dictionary</u>, https://www.merriam-webster.com/dictionary/directory ("an alphabetical or classified list (as of names and addresses)[.]"); *Directory*, <u>Cambridge Essential American English Dictionary</u>, https://dictionary.cambridge.org/us/dictionary/essential-american-english/directory ("a book or list of names and numbers"); *Directory*, <u>AllWords.com Multi-Lingual Dictionary</u>, https://www.allwords.com/word-directory.html ("A list of names, address etc., of specific classes of people or organizations, often in alphabetical order or in some classification.").
[35] https://www.advancedbackgroundchecks.com/privacy.
[36] https://www.fastpeoplesearch.com/try-peoplefinders.

Defendant lists the cell phone numbers of Coloradans it has never engaged with, has had no connection to, and who are unaware of its existence.

54.     Defendant's misappropriation of Class Members' personal data (including the economic value thereof) came at the expense of Class Members' PTFA privacy rights. It deprived Class Members of the real, quantifiable value of such data. And it exposed Class Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted telemarketing.

55.     Thus, on behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of herself and the proposed Class, respectfully requests that this Court enter an Order:

(a)     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

(b)     Declaring that Defendant's actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I) (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA");

(c)     Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent

offense;

(d)     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to comply with the PTFA;

(e)     Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

(f)     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

(g)     Awarding such other and further relief as equity and justice may require.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury for all issues so triable.

Dated:  December 9, 2024                    Respectfully submitted,


                                            _____/s/ Patrick H. Peluso_____
                                            One of Plaintiff's Attorneys

                                            **Peluso Law LLC**
                                            Patrick H. Peluso
                                            ppeluso@pelusolawfirm.com
                                            865 Albion Street, Ste. 250
                                            Denver, CO 80220
                                            T: (720) 805-2008
                                            F: (720) 336-3663

                                            **BURSOR & FISHER, P.A.**
                                            Joseph I. Marchese*
                                            Matthew A. Girardi*
                                            1330 Avenue of the Americas, 32nd Floor
                                            New York, NY 10019
                                            Telephone: (646) 837-7150
                                            Facsimile: (212) 989-9163
                                            E-mail: jmarchese@bursor.com

mgirardi@bursor.com

*Admission to be sought*

*Counsel for Plaintiff and the Putative Class*